[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 5, 2011
JOHN LEY
CLERK

No. 10-15390
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cr-00144-PCF-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RHONDA JENNETTE BAYS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 5, 2011)

Before CARNES, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Rhonda Jennette Bays appeals her 292-month concurrent sentences for

convictions on the charges of production of child pornography and conspiracy to

travel in interstate commerce for the purpose of engaging in illicit sexual conduct. Bays argues that her sentences are substantively unreasonable because she received a longer sentence than Tanner Stickney, another perpetrator, and because of her personal history and circumstances.

I.

Bays, who lived in Florida, began dating Tanner Stickney, who lived in Washington D.C., in 2007. In 2008 they regularly chatted online about having sexual contact with minors. Bays, in preparation for a June 2008 visit from Stickney, convinced her sister to allow her and Stickney to take her four-year-old nephew to an amusement park. Instead of taking the child to an amusement park, Bays and Stickney took the four-year-old to a motel where Bays videotaped Stickney touching the child's penis, rubbing his own erect penis against the child, and performing oral sex on the child.

After that trip, Bays and Stickney repeatedly chatted online with each other about that previous video and made plans to make a more explicit video that would involve even more sexual contact with her four-year-old nephew. Bays, using her cell phone, also sent to Stickney's cell phone nude photographs of the child. Stickney made plans to come back to Florida on May 15, 2009.

2

In preparation for Stickney's visit, Bays tried to convince her sister to let her babysit her four-year-old nephew for the weekend. Because that proved unsuccessful, two days before Stickney's trip Bays texted him that her nephew might not be available to sexually abuse, but that she was working on a replacement. Shortly thereafter Bays told Stickney that she had convinced the parents of a two-year-old relative to let her babysit the baby for the weekend.

Based on a tip from a confidential informant, Stickney was arrested in the Orlando, Florida airport on May 15, 2009. Stickney had with him a half-full bottle of anal lubricant. The agents also found the naked pictures of Bays' four-year-old nephew on his phone and the texts from Bays. Posing as Stickney, the agents began texting Bays. She responded with texts of her own by describing the types of sexual abuse Stickney would be able to inflict on her two-year-old relative, including forcing the two-year-old to perform oral sex on Stickney.

Bays was charged with production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) and 2 (Count 1), and conspiracy to travel in interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) and (e) (Count 2). She pleaded guilty to both counts.

Bays' base offense level under the guidelines for Count 1 was 32. She received a four-level increase because the offense involved a minor under the age

of 12; a two-level increase because the offense involved sexual contact; a two-level increase because it involved the distribution of child pornography; and a two-level increase because it involved a minor that Bays was related to and over whom she had custody, care, or supervisory control, for an adjusted offense level of 42 for Count 1. Bays had a base offense level of 24 for Count 2. She received a two-level increase because she was a relative of the minor victim; a two-level increase because the offense involved sexual contact; and an eight-level increase because the offense involved a minor under the age of 12, for an adjusted offense level of 36 for Count 2. The combined offense level under guidelines rule § 3D1.4 produced an adjusted offense level of 43. Bays received a three-level decrease for acceptance of responsibility, for a total offense level of 40. Bays did not have any criminal history points. Accordingly, the recommended range under the guidelines was 292–365 months imprisonment.

Bays requested below-the-guidelines-range sentences of 180 months. She argued that she was a non-violent offender, did not have a criminal history, and was not a danger to the community. Additionally, although she is very bright—she had an IQ of 159—a psychiatric evaluation indicated that she was bipolar, possibly suffered from Post Traumatic Stress Disorder, and had a borderline personality disorder. She also argued that Stickney had entered a plea

deal that would give him a 180-month sentence. Bays, however, could not say that Stickney was charged with the same crimes as her, and admitted that he probably did not receive the same guidelines score as her.

The government requested sentences near the top of the guidelines range, pointing to the heinous nature of Bays' offenses. It pointed out that she had attempted to victimize her two-year-old relative and likely would have succeeded if the government had not intervened. The government also explained Stickney's situation was not similar to Bays because his sentence resulted from his cooperation, which had led to the arrest and prosecution of two persons who were actively abusing children.

The court imposed a sentence "for a total term of 292 months." It explained that despite Bays personal history and mental health issues, the seriousness of the crimes, the fact that they were the result of careful planning and attention over time, the need to deter such conduct, and the need to protect the public warranted a guidelines-range sentence. The court recognized that Stickney apparently had received a shorter sentence, but noted that the discrepancy could be because of guidelines scoring differences, because Stickney may have been found guilty of different crimes, or because he had assisted in the arrest of two additional child molesters.

On appeal, we found that although the court "convicted Bays of both offenses . . . it did not impose a separate sentence on each count." United States v. Bays, 389 Fed. Appx. 916, 917 (11th Cir. 2010) (unpublished). We vacated the district court's judgment and sentence and remanded "with the instruction that the court impose separate sentences for Counts One and Two." Id.

On remand, the district court in addition to incorporating the entire first sentencing proceeding allowed more argument. Bays asked for below-the-guidelines-range sentences and again pointed to the potential sentencing disparity between her and Stickney. The government again argued that the disparity was warranted because Stickney provided the government with substantial assistance.

The district court did not think that below-the-guidelines-range sentences would be appropriate. The court responded to Bays' disparity argument by explaining that inequity between sentences is an "acceptable cost of being able to pursue other people who are engaged in criminal activity," and also by pointing out that Stickney actually was charged with different crimes than Bays. The court sentenced Bays to 292 months imprisonment on each count, to be served concurrently—sentences at the very bottom of the guidelines range.

II.

6

We review the reasonableness of a sentence for abuse of discretion. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). To determine if a sentence is substantively unreasonable, "we must, as the Supreme Court has instructed us, consider the totality of the facts and circumstances." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). "[O]rdinarily we . . . expect a sentence within the Guidelines range to be reasonable." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). We will vacate a sentence for substantive unreasonableness "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Irey, 612 F.3d at 1190 (quotation marks omitted). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." Tome, 611 F.3d at 1378.

The totality of the circumstances show that Bays' concurrent 292-month sentences are reasonable. The sentences were at the bottom of the range recommended by the guidelines. And the sentences take into account Bays' history and mental health issues, that she regularly talked with Stickney about sexually abusing minors, that she tricked her sister into allowing her and Stickney

7

to sexually abuse her four-year-old nephew, that she videotaped that abuse, that she used her cell phone to send Stickney naked pictures of her nephew, that she tried to again trick her sister to so she could again abuse her nephew, that when that failed she then planned to victimize her two-year-old relative, and that she texted Stickney about the ways that he could sexually abuse the baby. The fact that Stickney—who was charged with different crimes, who may have had a different guidelines score, and who assisted the government in the arrest and prosecution of two additional persons who were sexually abusing children—may have received a shorter sentence does not make Bays' sentence unreasonable.[1]

**AFFIRMED.**

---

[1]Bays makes the conclusory statement in her brief that "[i]t is a matter of policy, within the Middle District of Florida, that Fed. Crim. Rule 11(c)(1)(C) plea agreements are not allowed," which "is an Equal Protection problem." Bays fails to provide arguments as to why that "policy" would be an "Equal Protection problem," and therefore has abandoned the argument. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("If an argument is not fully briefed . . . we deem [it] abandoned and do not address its merits.").